## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD CHASE and STACEY CHASE, individually and on behalf of all those similarly situated,<br><br>     Plaintiffs,<br><br>v.<br><br>CAMPBELL SOUP COMPANY; and PLUM, PBC,<br><br>     Defendants. | Case No.: 1:21-cv-04650-NLH-KMW<br><br>**FIRST AMENDED<br>CLASS ACTION COMPLAINT<br>AND JURY DEMAND** |

Plaintiffs Richard Chase and Stacey Chase, individually and on behalf of all those similarly situated, (collectively, "Plaintiffs"), file this Complaint against the Defendants Campbell Soup Company, and Plum, PBC (collectively "Plum"), hereby state:

### Nature of the Action

1.     Plum manufactured and marketed baby food products, representing and warranting that its baby food was safe and healthy, contained only a disclosed list of ingredients, and would provide nourishment and nutrition to infants and children. Parents and caregivers trusted Plum's representations and warranties, purchased Plum's baby food products, and fed Plum's baby food products to their children. The Plum baby food products at issue include, but are not limited to:

- Plum Organics Baby Food Pouches, Stage 1: Just Peaches, Just Sweet Potato, Just Mangos and Just Prunes;

- Plum Organics Baby Food Pouches, Stage 2: Apple Butternut Squash & Granola, Pear Blueberry Avocado & Granola, Strawberry Banana & Granola, Mango Carrot & Coconut Cream, Butternut Squash Carrot Chickpea & Corn, Peach Banana & Apricot, Sweet Potato Apple & Corn, Apple & Carrot, Guava pear & Pumpkin, Apple Spinach & Avocado, Apple Raisin & Quinoa, Apple Blackberry & Coconut Cream, Banana & Pumpkin, Apple Raspberry Spinach & Greek Yogurt, Pea Kiwi Pear & Avocado, Pear Green Bean & Greek Yogurt, Pear & Mango, Peach Pumpkin Carrot & Cinnamon, Banana Zucchini & Amaranth, Mango Sweet Potato Apple & Millet, Mango Yellow Zucchini Corn & Turmeric, Apple &

1

Broccoli, Apple Plum Berry & Barley, Pear Spinach & Pea, Apple Cauliflower & Leek, Carrots Beans Spinach & Tomato, Pumpkin, Spinach Chickpea & Broccoli, Kale Corn Carrot & Tomato, Pear Purple Carrot & Blueberry;

- Plum Organics Baby Food Pouches, Stage 3: Carrot Spinach Turkey Corn Apple & Potato, Carrot Sweet Potato Corn Pea & Chicken, Carrot Chickpea Pea Beef & Tomato;

- Plum Organics Baby Food Pouches, Tots: Mighty Morning, Mighty Fiber, Mighty 4 Food Group Blend, Mighty Veggie, Mighty Protein & Fiber;

- Plum Organics Mashups: Applesauce Blueberry Carrot, Applesauce Carrot & Mago, Applesauce Strawberry Banana, Applesauce Strawberry & Beet;

- Plum Organics Super Puffs: Apple with Spinach, Strawberry with Beet, Mango with Sweet Potato, and Blueberry with Purple Sweet Potato;

- Plum Organics Little Teethers: Apple with Leafy Greens, Banana with Pumpkin, and Blueberry;

- Plum Organics Mighty Nut Butter Bar;

- Plum Organics Mighty Snack Bars;

- Plum Organics Mighty Morning Bar;

- Plum Organics Jammy Sammy; and

- Plum Organics Teensy Snacks.

2.      On February 4, 2021 the Subcommittee on Economic and Consumer Policy ("Subcommittee") of the United States House of Representatives issued a report titled "Baby Foods Are Tainted with Dangerous Levels of Arsenic, Lead, Cadmium, and Mercury"[1] (hereinafter referred to as the "House Report"). The House Report detailed the findings from an extensive inquiry focused on the safety of baby food products, and reported shockingly high levels of heavy metals in baby food products.

3.      The House Report confirmed that despite repeated requests made to Plum, it failed to fully cooperate with the House inquiry. Specifically, Plum "refused to produce its testing standards and specific testing results to the Subcommittee…[and] has hidden its policies and the

---

[1] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

actual level of toxic heavy metals in its products." The House Report explained that instead "of producing any substantive information, [Plum] provided a spreadsheet self-declaring that every one of its products 'meets criteria.'" However, Plum's "testing summary hides more than it reveals, since it does not show the levels of heavy metals that the testing found or the levels of heavy metals that would 'meet criteria.'" For instance, Plum advised that all its products "meet criteria" for mercury levels, yet it revealed that "it has no criterion whatsoever."

4.      Despite Plum's lack of cooperation, the House Report cited data reported by an organization concerned with the health and safety of baby food products. According to the "Healthy Babies Bright Futures Report: What's in My Baby's Food?" ("HBBF Report") some Plum products tested high in Arsenic, Lead, Cadmium and Mercury, all toxic heavy metals.[2] The HBBF Report also found troubling levels of perchlorate, a neurotoxin, in some Plum baby food products.

5.      Plum never disclosed the presence of toxic heavy metals or perchlorate in its baby food products to consumers and marketed its baby food products as "organic, non-GMO, [using] whole and simple ingredients."[3]

6.      Plum's deceptive marketing and warranties resulted in tens of thousands of consumers purchasing Plum baby food products that they thought were safe, nutritious and healthy, and instead were paying a premium for baby food products that were poisoning their children.

7.      The presence of these unsafe levels of toxic heavy metals and perchlorate rendered the Plum baby food products unfit for their intended purpose and uses, defective, worthless, and denied consumers the benefit of their bargain.

8.      Plaintiffs, on behalf of themselves and all similarly situated individuals, seek

---

[2] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

[3] https://www.plumorganics.com/food-philosophy/.

damages including recovery of the money they paid for the worthless Plum baby food products, and an order requiring that Plum cease manufacturing and marketing baby food products containing unsafe levels of heavy metals and perchlorate, or disclose the presence of these toxins in its baby food products and the dangers posed by such contamination.

## Jurisdiction and Venue

9.      This Court has jurisdiction over this action pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because at least one Class member is a citizen of a state other than that of Defendants, there are more than 100 Class members, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs.

10.      Venue is proper in this Court because the acts and omissions giving rise to this lawsuit took place in this District, Defendant Campbell Soup Company maintains its principal place of business and business operations within the District and Plum, PBC represents on its packaging that the products are distributed from Camden, New Jersey.

## The Parties

11.      Plaintiffs Richard Chase and Stacey Chase, are citizens of the state of South Carolina and are residents of Manning, South Carolina.  Plaintiffs purchased various Plum baby food products for their three children from 2013 to the date the House Report was released, including, but not limited to:

- Plum Organics Stage 2, Organic Baby Foods: Peach Banana & Apricot, Banana & Pumpkin, Pear & Mango, Mango Sweet Potato Apple & Millet, Apple & Broccoli, Apple & Carrot, Fruit & Veggie Variety Pack; and

- Plum Organics, Organic Toddler Food: Zucchini Apple Watermelon & Barley, Mighty Veggie Variety Pack.

Photographs of some of the Plum baby food products that were in plaintiffs' possession at the time the House Report was released are below:

4





12.     These Plum foods were predominantly purchased from Amazon.com and therefore Plaintiffs have evidence of their proof of purchase of the subject Plum baby products.  Examples of these Amazon purchase records are as follows:



13.     Prior to purchasing the Plum baby food products, Plaintiffs relied on the representations and warranties, including the list of ingredients and promises of safe and nutritious baby food, on the food packaging and labels. For example:



14.    Plaintiffs were not aware at the time of the purchases that the Plum baby food products actually contained dangerous, unsafe levels of toxic heavy metals and perchlorate. If Plaintiffs had known the true facts, they would not have purchased the Plum baby food products, which were unsafe, dangerous to their children, and worthless.

15.    Defendant Campbell Soup Company is a New Jersey corporation with its principal place of business located in Camden, New Jersey.

16.     Plum, PBC is a Delaware corporation with their principal place of business located in San Francisco, California.  In 2013, Campbell Soup Company purchased Plum, Inc., which later reincorporated as Plum, PBC.  Together, Campbell and Plum do business as Plum Organics.

17.     Plum develops, manufactures, markets and sells foods and snacks for infants and toddlers[4], including the baby food products containing unsafe levels of heavy metals and perchlorate.

## FACTUAL ALLEGATIONS

### A.  Plum Organics

18.     Plum markets, represents, warrants, and distinguishes itself from other food brands by holding itself out as being "founded on the belief that little ones deserve the very best food from the very first bite," using "organic, non-GMO, whole and simple ingredients."[5]  These representations and warranties were intended to and did induce Plaintiffs and those similarly situated to trust and rely on, and purchase Plum baby food products.  These representations and warranties were explicit and intended to induce purchases, for example:



---

[4] https://www.plumorganics.com/mission/.

[5] *Id*.; *see also* https://www.plumorganics.com/food-philosophy/.

19.    Plum's representations and warranties included a "Commitment" to caregivers that its foods were healthy and contained only safe, organic ingredients.

20.    Plum markets its baby food products with the intention of inducing consumer purchasing behavior over the course of years, for example dividing the baby food products into "stages" that are geared toward different age children, while consistently representing and warranting that the baby food products were safe and contained only safe, natural, organic, nutritious ingredients, and failing to disclose that they contained dangerous levels of heavy metals and perchlorate.[6]  For example:



21.    Plum represented and warranted that its "Stage 1" foods, for children 4 months and older, are "perfect for introducing solids or first foods to your budding eater…[and include] only non-GMO, organic ingredients, the blends are all unsalted, unsweetened, and kosher parve."[7]

22.    Plum's "Stage 2" foods, for children 6 months and older, are marketed as "organic baby food pouches… made with blends of fruit, veggies, grains, and Greek yogurt that are perfect for exposing your little foodie to unique flavors and colors."[8]

---

[6] *Id.*

[7] https://www.plumorganics.com/baby-snacks/.

[8] *Id.*

9

23.    Plum's "Stage 3" foods, are marketed as "perfect for budding foodies," that "develop a baby's palate while helping to transition baby to table food."[9]

24.    Plum claims that its "Tots" foods are "a puree of organic fruits, veggies, protein and grains, are the perfect snack for toddlers," "filled with essential nutrients," "nutritious," and contain "essential vitamins and minerals."[10]

25.    Plum makes similar claims relating to its "Kids" foods and other "snacks."

26.    Plaintiffs and other similarly situated consumers, having read and relied on such representations and warranties, were induced to believe that Plum baby food products were safe and healthy and nutritious, and purchased them as a result.  Notably, none of Plum's packaging or marketing materials warned that its baby food products contained unsafe levels of dangerous toxic heavy metals or perchlorate that could harm the health and physiological and neurocognitive development, including brain development, of children consuming such baby food products.

27.    Plum falsely represented and warranted the contents, ingredients, safety, and nutritional value of the baby food products because Plum knew that Plaintiffs and similarly situated consumers would never have purchased the Plum baby food products to be fed to their children if truthful information had been provided. At all times, Plum had a duty to provide only accurate and truthful representations, warranties, and information about its baby food products, and the aforesaid conduct breached that duty.  As a result, Plaintiffs and those similarly situated were economically harmed.

**B.  The House Report**

28.    The House Report concluded that baby food products contained unsafe levels of

---

[9] *Id.*

[10] https://www.plumorganics.com/tots-snacks/.

toxic heavy metals including arsenic, lead, cadmium, and mercury."[11]

29.     The House Report describes the background and genesis of the Subcommittee's investigation.  On November 6, 2019, having been made aware of reports of high levels of toxic heavy metals in baby foods, the Subcommittee requested internal documents and test results from seven of the largest manufacturers of baby food products in the United States, including Plum.[12]

30.     Four of the companies responded to the Subcommittee's requests, while three of the companies, including Plum, failed to cooperate.[13]

31.     The House Report found that heavy metals including arsenic, lead and cadmium were contained in the baby food products marketed by all four companies that cooperated with the Subcommittee investigation.  Additionally, mercury was found in the baby foods of the only one of the four companies that tested its foods for Mercury.[14]

32.     The Subcommittee expressed "grave concerns about baby food products manufactured by…Campbell (Plum Organics)."  Specifically, the Subcommittee was "greatly concerned that [Plum's] lack of cooperation might obscure the presence of even higher levels of toxic heavy metals in their baby food products, compared to their competitors' products."[15]  On information and belief, Plum failed and refused to fully cooperate with the Subcommittee investigation because it did not want to disclose the dangerous levels of heavy metals and perchlorate in its baby food products, which would have demonstrated the falsity of its representations and warranties with regard to the safety, ingredients, and nutritional value of its

---

[11] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf.

[12] *Id*. at 2.

[13] *Id*.

[14] *Id*. at 3-4.

[15] *Id*. at 5.

baby food products.

33.    On information and belief, Plum's refusal to cooperate with a government investigation intended to protect the safety and development of babies and children was deliberate, and intended to protect its profits and financial priorities at the expense of the safety and health of babies and children.

34.    The Subcommittee stated that Plum's evasion is concerning, as even limited independent testing has revealed the presence of toxic heavy metals in its baby food."[16]  This was a reference to outside testing that revealed dangerous levels of heavy metals in Plum's baby food products.

35.    The House Report specifically cited to an independent HBBF report titled detailing the findings of testing conducted by an independent organization focused on the health and safety of babies and children.  That report described the results of its testing of Plum Organics baby food products and found the presence of arsenic, lead, cadmium and mercury, which was dangerous, unsafe, and unfit for consumption by babies and children.

**C.  Dangers Posed by Heavy Metals**

36.    Heavy metals are naturally existing elements that have high atomic weight and a minimum density five times the density of water.  However, the term "heavy metals" is frequently used to describe both metals and metalloids, including for example arsenic, cadmium, lead, manganese, mercury, zinc, chromium and copper.

37.    The World Health Organization has declared that arsenic, cadmium, lead and mercury are a "major public health concern."[17]

---

[16] *Id*. at 45.

[17] https://www.who.int/ceh/capacity/heavy_metals.pdf.

38.    The House Report stated, consistent with the scientific literature, that exposure to heavy metals in infants and children is particularly dangerous even in small amounts, and can lead to "untreatable and frequently permanent brain damage."[18]

39.    The House Report stated, consistent with the scientific literature, that the known risks of arsenic include "respiratory, gastrointestinal, haematological, hepatic, renal, skin, neurological and immunological effects, as well as damaging effects on the Central nervous system and cognitive development in children."[19]

40.    The House Report referenced an independent study titled "Association of Arsenic, Cadmium and Manganese exposure with neurodevelopment and behavioral disorders in children" that concluded arsenic exposure has a "significant negative effect on neurodevelopment in children."[20]

41.    The House Report stated, consistent with the scientific literature, that cadmium is associated with decreases in IQ, and the development of Attention Deficit/Hyperactivity Disorder.[21]

42.    The House Report stated, consistent with the scientific literature, that lead exposure is associated with "behavioral problems, decreased cognitive performance, delayed puberty, and reduced postnatal growth," and the cognitive effects of early childhood lead exposure are believed to be permanent.[22]

43.    In addition, the House Report stated, consistent with the scientific literature, that there is a significant association between lead exposure and Attention Deficit/Hyperactivity

---

[18] https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-02-04%20ECP%20Baby%20Food%20Staff%20Report.pdf at 9-10.

[19] *Id*. at 10.

[20] *Id*. at 10.

[21] *Id*. at 12.

[22] *Id*. at 11.

Disorder.[23]

44.    The House Report stated, consistent with the scientific literature, that "higher blood mercury levels at two and three years of age were positively associated with autistic behaviors."[24] The findings in the House Report are fully consistent with the scientific literature, and on information and belief, Plum knew or should have known that these significant risks existed throughout the time that Plum designed, manufactured and marketed its baby food products with unsafe levels of heavy metals.

**D.  Dangers Posed by Perchlorate**

45.    Perchlorate is a negatively charged molecule made of one chlorine atom and four oxygen atoms.[25]

46.    According to the FDA, "Perchlorate occurs naturally in arid states in the Southwest United States (U.S.), in nitrate fertilizer deposits in Chile, and in potash ore in the U.S. and Canada. Perchlorate also forms naturally in the atmosphere. Manufactured perchlorate is used as an industrial chemical and can be found in rocket propellant, explosives, fireworks, and road flares."[26]

47.    In addition, small amounts of perchlorate "may be used as a component in certain containers and food processing equipment for use in contact only with only certain types of dry foods."[27]

48.    The FDA has warned that "[h]uman exposure to high dosages of perchlorate can interfere with iodide uptake into the thyroid gland, disrupting the functions of the thyroid and

---

[23] *Id*. at 12.

[24] *Id*. at 12-13.

[25] https://www.fda.gov/food/chemicals/perchlorate-questions-and-answers.

[26] *Id*.

[27] *Id*.

potentially leading to a reduction in the production of thyroid hormone….In fetuses and infants, thyroid hormones are critical for normal growth and development of the central nervous system. Pregnant women and their fetuses and newborns have the greatest potential for risk of adverse health effects following exposure to perchlorate."[28]

### E. Plum's Knowledge of and Failure to Disclose Heavy Metal and Perchlorate Contamination in its Foods

49.    Despite the known and knowable risks of exposure to these heavy metals and Perchlorate, Plum negligently, recklessly, and/or knowingly sold its baby food products containing dangerous heavy metals and perchlorate, and without disclosing a warning to Plaintiffs and those similarly situated.

50.    At all times relevant, Plum knew or should have known the contents of its baby food products. Plum also knew or should have known the contents of ingredients supplied by suppliers for inclusion in the baby food products, including the presence of dangerous heavy metals and perchlorate.

51.    Upon information and belief, Plum regularly tests the component ingredients and the finished products, and knew or should have known of the presence of dangerous heavy metals. Plum recklessly and with willful and wanton disregard of the rights and health of the those who purchased and consumed its baby food products, disregarded the unreasonable risks created by the presence of heavy metals and perchlorate in its baby food, and failed to adequately inform or warn Plaintiffs and those similarly situated.

52.    In October, 2019, the Healthy Babies Bright Futures nonprofit organization notified Plum of the presence of unacceptable, dangerous levels of heavy metals and perchlorate in their

---

[28] *Id.*

baby food products.[29] Even after being notified in this manner, Plum failed to take adequate measures to sell baby food products without unsafe levels of heavy metals and perchlorate, or to adequately warn consumers.

53.     Despite Plum's knowledge of heavy metal and perchlorate contamination in its baby food products, Plum failed to take action to change or adjust the design, manufacturing, or marketing of its baby food products, including the failure to provide adequate warnings about the heavy metal and perchlorate contamination to Plaintiffs and other similarly situated consumers.

54.     Plum's marketing of its baby food products without any warning indicating that these products contain heavy metals and perchlorate, or that these toxins can accumulate in a child over time to the point where poisoning, injury, and/or disease can occur, was reckless, and undertaken with willful and wanton disregard of Plaintiffs and those similarly situated.

55.     Plum's misrepresentations and untrue warranties regarding the safety, ingredients, and nutritional value of their baby food products, as well as its omissions and failure to warn about the presence of toxic heavy metals and perchlorate were material, false, misleading, and intended to be and were reasonably likely to deceive the public, including Plaintiffs and those similarly situated. This is true especially considering Plum's long-standing marketing of its baby food products as "organic," "nutritious" and "filled with essential nutrients."

56.     These representations and "Commitments" in Plum's marketing and labeling were deceptive, affirmatively representing an inaccurate list of ingredients and safety and nutrition information, and failing to disclose the presence of heavy metals and perchlorate in its baby food products. Reasonable consumers, including Plaintiffs and those similarly situated, were unaware of

---

[29] http://www.healthybabyfood.org/sites/healthybabyfoods.org/files/2019-10/BabyFoodReport_FULLREPORT_ENGLISH_R5b.pdf.

16

the presence of unsafe levels of heavy metals and perchlorate in Plum's baby food products, and would not have purchased Plum's baby food products if they had known the true list of ingredients including the heavy metals and perchlorate.  Plum's above-referenced statements, representations, warranties, and omissions were false, misleading, and intended to deceive the public, including Plaintiffs and those similarly situated.  Plaintiffs and those similarly situated were deceived by the marketing images representing and warranting that Plum foods are healthy, safe, high-quality, contain only the listed ingredients, and not disclosing the inclusion of heavy metals such as arsenic, cadmium, lead and mercury. Plum also knew but disregarded the fact that Plaintiffs and those similarly situated would deem the presence of heavy metals and perchlorate in its baby food products to be material in selecting baby food products for purchase and to be fed to their children.

57.    Plum also knew or should have known that Plaintiffs and similarly situated consumers would be feeding the Plum baby food products to their children regularly, including multiple times each day, and that this repeated ingestion would cause and exacerbate the build-up of the heavy metals and perchlorate in their children.

58.    As a result of the aforesaid wrongdoing, Plum has generated substantial sales and profits from the sale of its baby food products to Plaintiffs and those similarly situated.  These sales would not have occurred if Plum had provided accurate information.

## RULE 9(B) ALLEGATIONS

59.    To the extent necessary, as detailed in the paragraphs above and below, Plaintiffs have satisfied the requirements of Rule 9(b) by establishing the following elements with sufficient particularity:

a.  WHO:  Campbell Soup Company and Plum, PBC, acting through their employees and agents, made material misrepresentations and omissions of fact in the sale, marketing, advertising, and promotion of its Plum baby food products.

b.  WHAT:  Campbell Soup Company and Plum, PBC made material misrepresentations and omissions by marketing, advertising, promoting, and selling its baby food products as containing listed ingredients and nutritional benefits, and using materially misleading and false terminology to describe the contents, including but not limited to: "organic," "nutritious" and "filled with essential nutrients."  Such representations and warranties were deceptive and misleading because Plum baby food products contained toxic heavy metals and perchlorate that pose a danger to the health and safety of babies and children when ingested.  Plum failed to inform consumers that its baby food products contained or had a risk of containing unsafe levels of heavy metals, including cadmium, arsenic, lead, and mercury, as well as perchlorate.  Plaintiffs and similarly situated reasonable consumers expected that baby food products, and in particular those marketed as "perfect," "organic," "nutritious," "non-GMO" and "packed with essential vitamins and minerals" would only contain objectively safe ingredients and components, and would not contain dangerous levels of undisclosed heavy metals and perchlorate, and this was known to Plum.  Plum failed to inform Plaintiffs and similarly situated consumers that Plum baby food products contained heavy metals and perchlorate because Plum intended for them to believe that its baby food products were safe and healthy and posed no unreasonable safety risks to children.  Indeed, Plum knew that its representations and warranties and omissions rendered the contents of the packages, labels, and marketing, advertising, and promotions false, because the baby food products contained unsafe levels of heavy metals and perchlorate.

c.  WHERE:  The misrepresentations and material omissions were on Plum baby food product

packages, labels and marketing, advertising, and promotions.  These misrepresentations and

material omissions were included on the products themselves, which failed to disclose the

presence of heavy metals and/or perchlorate:



d.  WHEN:  Plum made the material misrepresentations and omissions every time its baby food

products were sold, marketed, advertised, and promoted.

e.  WHY:  Knowing that consumers would not purchase baby food products containing unsafe

levels of heavy metals, or the disclosed risk of containing unsafe levels of heavy metals and

perchlorate, Plum intentionally failed to inform consumers that Plum baby food products

contained, or risked containing unsafe levels of heavy metals and perchlorate.  Plum took

these actions in order to profit from the sale of its baby food products despite the health

risks they posed, placing profits ahead of safety.

f.  HOW:  Plum made material misrepresentations and failed to disclose material facts concerning the presence of unsafe levels of heavy metals and perchlorate in its baby food products by representing false and incomplete lists of ingredients and nutritional information, and descriptions of the baby food products as safe and healthy both directly and through the terminology utilized as aforesaid, and failing to inform consumers that they contained unsafe levels of heavy metals and perchlorate.

## CLASS ACTION ALLEGATIONS

60.     Plaintiffs bring this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of all persons who purchased Plum baby food products for personal use (and not for resale) from March 10, 2015 to the present (the "Nationwide Class").

61.     Plaintiffs also bring this action individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a sub-class of all persons who are citizens of South Carolina and who purchased Plum baby food products from March 10, 2105 to the present (the "South Carolina Sub-Class").

62.     Collectively, the Nationwide Class and the South Carolina Sub-Class are referred to as "Classes."

63.     Excluded from the Classes are Defendants; any parent, subsidiary, or affiliate of Defendants; any entity in which Defendants have or had a controlling interest, or which Defendants otherwise control or controlled; any officer, director, employee, legal representative, predecessor, successor, or assignee of Defendants; and any judges presiding over this case.

64.     This action is brought as a class action for the following reasons:

a.     The Classes consist of thousands of persons and is therefore so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

b.    There are questions of law or fact common to the Classes that predominate over any questions affecting only individual members, including:

i.    whether Defendants breached their express and/or implied warranties with consumers by selling baby food products containing unsafe levels of heavy metals and perchlorate;

ii.    whether Defendants violated state consumer protection laws;

iii.    whether Plaintiffs and the Classes have sustained damages and, if so, the proper measure thereof; and

iv.    whether Defendants should be enjoined from continuing to sell foods absent sufficient controls and procedures, including accurate lists of ingredients and contents, to ensure that they do not contain dangerous levels of heavy metals and perchlorate and/or that consumers will know the true ingredients, contents, and risks, before purchase;

c.    The claims asserted by Plaintiffs are typical of the claims of the members of the Classes;

d.    Plaintiffs will fairly and adequately protect the interests of the Classes, and Plaintiffs have retained attorneys experienced in class actions and complex litigation, including class litigation involving consumer protection and deceptive labelling;

e.    Prosecuting separate actions by individual class members would create a risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants;

f.    Defendants have acted on grounds that apply generally to the Classes, namely representing that its baby food products are healthy and organic and omitting that they contain unsafe levels of heavy metals and perchlorate, so that final injunctive relief prohibiting

21

Defendants from continuing its deceptive practices is appropriate with respect to the Classes as a whole;

g.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy, for at least the following reasons:

i.      Absent a class action, Class members as a practical matter will be unable to obtain redress, as the cost of litigation would be prohibitive as compared to the potential recovery for an individual plaintiff; in that event damaged class members will obtain no relief, Defendants' violations of its legal obligations will continue without remedy, additional consumers and purchasers will be harmed, and Defendants will continue to retain their ill-gotten gains;

ii.      It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

iii.      When the liability of Defendants has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

iv.      A class action will permit an orderly and expeditious administration of the Classes' claims, foster economies of time, effort, and expense, and ensure uniformity of decisions;

v.      This lawsuit presents no logistical or other practical difficulties that would impede its management by the Court as a class action; and

vi.      Defendants have acted on grounds generally applicable to Classes, making class-wide monetary and injunctive relief appropriate and feasible.

h.      Class members are ascertainable through the use of purchase records, reward and/or membership programs, and the possession of the products themselves.

## CLAIMS FOR RELIEF

## COUNT I
### (Breach of Express Warranty)

65.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

66.    Plaintiffs bring this claim individually and on behalf of the Classes.

67.    Plum falsely represented and warranted that Plum baby food products were safe, healthy, contained specific ingredients, and were nutritious products to feed to babies and children, utilizing terminology including but not limited to "organic," "nutritious," "perfect," "packed with essential vitamins and minerals," "healthy" and with lists of ingredients listed on their packages and labels.  Each of these statements constitutes an affirmation of fact.

68.    However, Plum foods are not in fact safe and healthy and do not contain only the ingredients listed on their labels because they contain unsafe levels of heavy metals and perchlorate.

69.    The inclusion of unsafe levels of heavy metals and perchlorate is material because unsafe levels of these toxins rendered Plum baby food products dangerous, presenting a significant, unreasonable risk of physical and cognitive harm, and thus rendering the baby food products worthless.  Plaintiffs and those similarly situated would not have purchased the Plum baby food products in the absence of these false and misleading representations and warranties, and/or if the true facts had been disclosed.

70.    Defendants' representations regarding the ingredients in Plum baby food products related to the goods and became part of the basis of the bargain between Defendants and Plaintiffs and similarly situated purchasers of Plum baby food products.

71.    Plaintiffs and members of the Classes purchased Plum baby food products because they relied on and believed that they conformed to the express warranties.

72.    As set forth herein, Defendants' statements concerning the safety, health benefits,

and ingredients in Plum baby food products were false and materially misleading.

73.    All conditions precedent to Defendants' liability under the above-referenced contract have been performed by Plaintiffs and the other members of the Classes.

74.    As a result of Defendants' breaches of its express warranties, Plaintiffs and the other members of the Classes were damaged in the amount of the purchase price they paid for Plum baby food products, which they would not have otherwise paid, in amounts to be proven at trial.

75.    Defendants were on notice that Plum baby food products contained unsafe levels of heavy metals and perchlorate, that the presence of these toxins was contrary to and breached Defendants' express warranties, and that Plaintiffs and similarly situated class members would be and actually were damaged as a result.

76.    As a proximate result of the breach of warranties by Defendants, Plaintiffs and the other members of the Classes did not receive goods as warranted.  Among other things, Plaintiffs and the other members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed herein.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Plum baby food products.

## COUNT II
### (Breach of Implied Warranty of Merchantability And Fitness For a Particular Purpose)

77.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

78.    Plaintiffs brings this claim individually and on behalf of the Classes.

79.    Defendants knew that the purpose for which consumers purchased its baby food products was to provide safe, healthy and nutritious foods to their children, containing only the ingredients represented on the packages, labels, marketing, advertising, and promotions.

80.    Plum knew that Plaintiffs and similarly situated consumers trusted and relied on the

accuracy of the marketing and labeling for the Plum baby food products, and that Plum was supplying baby food that was safe and suitable for consumption by their children.

81.     Plaintiffs and members of the Classes relied on Plum to not include unsafe ingredients such as unsafe levels of heavy metals and perchlorate in its baby food products; had they known, or even suspected, that Defendants' foods were contaminated with unsafe levels of heavy metals and perchlorate, they would not have purchased the subject foods.

82.     Plaintiffs and members of the Classes were injured because Plum baby food products were not fit for the particular purpose for which they were purchased, namely to provide safe, healthy and nutritious food to be fed to their children.

83.     As a proximate result of the breach of implied warranties by Defendants, Plaintiffs and the other members of the Classes did not receive merchantable goods that were fit for their intended purpose.  Among other things, Plaintiffs and members of the Classes did not receive the benefit of the bargain and have suffered other injuries and damages as detailed above.  Had Plaintiffs and the members of the Classes known the true facts, they would not have purchased the subject Plum baby food products.

## COUNT III
### (Negligent Misrepresentation)

84.     Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

85.     Plaintiffs bring this claim individually and on behalf of the Classes.

86.     Plum owed a duty to Plaintiffs and the Classes to exercise reasonable and ordinary care in the formulation, design, testing, manufacture, packaging, labeling, marketing, advertising, promotion, distribution, and sale of its baby food products.

87.     Plum breached its duty to Plaintiffs and the Classes by designing, testing, formulating, manufacturing, packaging, labeling, marketing, advertising, promoting, distribution,

25

and sale of its baby food products to Plaintiffs and the Classes, because the baby food products contained unsafe levels of heavy metals and perchlorate,  Plum provided inaccurate and materially misleading information as to the ingredients, qualities, characteristics, and suitability for consumption of the baby food products, and Plum failed to remove the subject baby food products from the marketplace or to take other appropriate remedial action to protect the safety and health of the babies and children that Plum knew would eat the baby food products containing unsafe levels of heavy metals and perchlorate.

88.    Plum knew or should have known that the ingredients, qualities, and characteristics of the foods were not as represented, marketed, advertised, or promoted, that the baby food products were not suitable for their intended use of consumption by children, and were otherwise not as warranted and represented by Plum.  Plum knew or should have known that (1) the baby food products were not nutritious, superior quality, clean, healthy and safe for consumption because they contained, or had a risk of containing, unsafe levels of heavy metals and perchlorate that did not conform to the packaging, labeling, or other representations and statements of the ingredients and quality, safety, and nutritional value of the baby food products; and (2) the baby food products were otherwise not as represented and warranted by Plum.

89.    As a direct and proximate result of Plum's aforesaid conduct, Plaintiffs and the Classes have suffered actual damages in that they purchased Plum baby food products that presented an unreasonable risk of harm and that were thus worthless.  Plaintiffs and the similarly situated members of the Classes would not have purchased the baby food products at all in the absence of the misrepresentations catalogued herein, and if they had been provided accurate information, including that the baby food products contained, or were at risk of containing, unsafe levels of heavy metals and perchlorate.

<u>COUNT IV</u>
**(Violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56: 8-1 *et seq.*)**

90.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

91.    Plaintiffs brings this claim individually and on behalf of the Classes.

92.    The New Jersey Consumer Fraud Act prohibits, *inter alia*:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . .

N.J.S.A. § 56:8-2.

93.    Defendants' misrepresentations and false, deceptive, and misleading statements and omissions with respect to the inclusion of unsafe levels of heavy metals and perchlorate in Plum baby food products, as described herein, constitute affirmative misrepresentations and omissions in connection with the marketing, advertising, promotion, and sale of baby food products in violation of the New Jersey Consumer Fraud Act.

94.    Defendants' false, deceptive, and misleading statements and omissions were and would have been material to any potential consumer's decision to purchase Plum baby food products.

95.    Defendants failed to inform consumers that Plum baby food products contained unsafe levels of heavy metals and perchlorate.  That information would have been material to any consumer deciding whether to purchase Plum baby food products.

96.    Defendants made these false, deceptive, and misleading statements and omissions with the intent that consumers rely upon such statements, and Plaintiffs and similarly situated class members did rely on such statements and omissions.

27

97.    Upon information and belief, Defendants' misrepresentations and omissions were created, approved, and implemented from its New Jersey headquarters.

98.    Plaintiffs and the other members of the Classes suffered an ascertainable loss as a direct and proximate result of Defendants' actions in violation of the New Jersey Consumer Fraud Act.

99.    As a consequence of Defendants' wrongful actions, Plaintiffs and the other members of the Class suffered an ascertainable monetary loss based on and measured by the price they paid for Plum baby food products, which they would not have paid in the absence of the aforesaid wrongdoing.

100.    Plaintiffs and other members of the Class suffered an ascertainable loss caused by Defendants' misrepresentations and omissions because they would not have purchased Plum foods if the true facts concerning unsafe levels of heavy metals and perchlorate had been known.

101.    Defendants' sale of baby food products containing unsafe levels of heavy metals and perchlorate for consumption by children was unconscionable, and the misrepresentations and omissions it made with regard to Plum baby food products were made for the sole purpose of inducing consumers to purchase Plum baby food products to feed to their children irrespective of any health consequences.  Defendants' conduct was intentional, wanton, willful, malicious, and in blatant disregard of, or grossly negligent and reckless with respect to, the, life, health, safety, and well-being of children eating the baby food products.  Defendants are therefore liable for treble damages and punitive damages, in an amount to be determined at trial.

102.    By reason of the foregoing, Defendants are liable to Plaintiffs and the other members of the Class for trebled compensatory damages; punitive damages; attorneys' fees, and the costs of this suit.  N.J.S.A. §§ 56:8-2.11, 8-2.12, 8-19.

**COUNT V**
**(Fraud)**

103.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

104.    Plaintiffs bring this claim individually and on behalf of the Classes.

105.    Plum made material misrepresentations and omissions concerning a presently existing or past fact.  Plum intentionally failed to fully and truthfully disclose to Plaintiffs and similarly situated consumers the true list of ingredients in its baby food products, and the true safety, nutritional value, and risks of eating the baby food products, which was not readily discoverable until this information was recently made public on a widescale basis through the House Report.  As a result, Plaintiffs and the other members of the Classes relied on the false and misleading information provided by Plum, and were thus fraudulently induced to purchase the Plum baby food products containing unsafe levels of heavy metals and perchlorate.

106.    Plum's affirmative misrepresentations and omissions were made by Plum with knowledge of their falsity, and with the intent that Plaintiffs and other members of the Classes would rely on them.

107.    Plaintiffs and other members of the Classes reasonably relied on these statements and omissions, and suffered damages as a result.

**COUNT VI**
**(Unjust Enrichment)**

108.    Plaintiffs repeat and restate the foregoing allegations as if set forth at length herein.

109.    Plaintiffs brings this claim individually and on behalf of the Classes.

110.    This cause of action is pled in the alternative to the other claims.

111.    Plaintiffs and those similarly situated conferred a tangible economic benefit upon Defendants by purchasing the Plum baby food products.  Plaintiffs and those similarly situated

would not have purchased the plum baby food products had they known that they contained

unsafe levels of heavy metals and/or perchlorate.

112.    By engaging in the conduct described above, Defendants were unjustly enriched

and received a benefit beyond what was contemplated by the parties, at the expense of Plaintiffs

and those similarly situated.

113.    It would be unjust and inequitable for Defendants to retain the payments Plaintiffs

and those similarly situated made for the Plum foods.

114.    By reason of the foregoing, Defendants are liable to Plaintiffs and members of the

Classes for the damages that they have suffered as a result of Defendants' actions, the amount of

which shall be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment against

Defendants as to each and every count, including:

a)    An Order certifying this action as a class action, with classes as defined above;

b)    An Order appointing Plaintiffs as class representatives and their counsel as class counsel, to represent the Classes, and requiring Plum to bear the costs of class notice;

c)    An order requiring Plum to pay all actual, compensatory, and statutory damages permitted or required for the conduct set forth herein;

d)    An order requiring plum to disgorge or return all monies, revenues, and profits obtained by means of any wrongful or unlawful act or practice set forth or encompassed herein;

e)    An order requiring Plum to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or a fraudulent business act or practice, untrue or misleading packaging, labeling, advertising, marketing, or promotion, or a violation of law;

f)    An order enjoining Plum from selling the Plum baby food products until the unsafe levels of heavy metals and perchlorate are removed, and/or until full disclosure of the presence of the unsafe levels of heavy metals and perchlorate are truthfully disclosed on all packaging, labels, advertising, marketing, and promotions;

30

g)   An order enjoining Plum from selling Plum baby food products in any manner suggesting or implying that they are healthy, organic, clean and/or safe for consumption, as long as they contain unsafe levels of heavy metals and perchlorate;

h)   An order requiring Plum to engage in a corrective advertising campaign and engage in further necessary affirmative injunctive relief, such as recalling existing baby food products;

i)   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Plum from continuing the unlawful practices alleged herein, and injunctive relief to remedy Plum's past conduct;

j)   An Order requiring Plum to pay pre- and post-judgment interest;

k)   An Order requiring plum to pay treble damages;

l)   An Order requiring Plum to pay punitive damages;

m)   An order awarding attorney's fees and costs, including the costs of pre-suit investigation; and

n)   An order providing for such further relief as the Court deems just and equitable.


## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a trial by jury on all counts and claims.

<div align="right">

*/s/ Matthew R. Mendelsohn*
Adam M. Slater
Matthew R. Mendelsohn
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391

*Attorneys for Plaintiffs*

</div>

## **LOCAL CIVIL RULE 11.2 CERTIFICATION**

I hereby further certify that to the best of my knowledge the matter in controversy is not the subject of  another action, pending arbitration or administrative proceeding in this District, with the exception of *Smid v. Campbell Soup Company, et al.*, No. 1:21-cv-02417-NLH-KMW.

Dated: March 10, 2021

<div style="margin-left:40%">

*/s/ Matthew R. Mendelsohn*
Adam M. Slater
Matthew R. Mendelsohn
Julia S. Slater
**Mazie Slater Katz & Freeman, LLC**
103 Eisenhower Parkway
Roseland, NJ 07068
(973) 228-0391

*Attorneys for Plaintiffs*

</div>